**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

UNITED STATES OF AMERICA,

Plaintiff,

v.

BRIAN STEVEN SMITH,

Defendant.

Case No. 3:24-cr-00040-ACP-KFR

# REPORT AND RECOMMENDATION
## RE MOTIONS AT DOCKETS 116, 119, & 120

Before the Court are three motions filed by self-represented Defendant Brian Steven Smith: (1) a Motion to Dismiss Indictment or in the Alternative for a Continuance and Findings of Prejudice ("Motion to Dismiss or Continue") at Docket 119; (2) a Motion to Recognize and Remedy Pretrial Prejudice at Docket 120; and (3) a Motion for Hearing at Docket 116, which the Court construes as a request for an evidentiary hearing on the former two motions.[1] The government responded in opposition to the former two motions,[2] and Defendant replied.[3] For the reasons explained below, the Court recommends that each of Defendant's motions be **DENIED** except with respect to Defendant's request at Docket 119 for a continuance of the trial date. On that limited matter, the Court recommends only that the District Judge exercise his discretion on Defendant's request after inquiring and making findings on the record as to the propriety of a continuance.

//

[1] The Court addresses these three motions in a single report and recommendation because they involve overlapping facts and law. The Court will address Defendant's four other pending motions, which he filed at Dockets 121, 122, 123, and 124, in separate reports and recommendations.

[2] Docket 131. The government did not oppose Defendant's Motion for Hearing to the extent that Defendant requested "a status hearing to discuss the status of discovery in this case." Docket 117.

[3] Docket 138. The Court allowed Defendant to reply pursuant to Local Criminal Rule 47.1(d). Docket 135.

## I. BACKGROUND

In October 2019, the State of Alaska charged Defendant with multiple criminal offenses in connection with the deaths of two women.[4] On February 22, 2024, a jury found Defendant guilty of first-degree murder, second-degree murder, evidence tampering, and various sex crimes.[5] On July 12, 2024, the Alaska Superior Court sentenced Defendant to a term of imprisonment.[6] On October 7, 2024, Defendant appealed from the judgment of conviction to the Alaska Court of Appeals, where his case remains pending.[7] Defendant also filed a post-conviction relief application in the Alaska Superior Court, and that case likewise remains pending.[8]

On April 16, 2024—between Defendant's state conviction and sentencing—a federal grand jury returned an indictment charging Defendant with one count of Unlawful Procurement of Naturalization, in violation of 18 U.S.C. § 1425(a), and one count of Unlawful Procurement of Naturalization by an Ineligible Person, in violation of 18 U.S.C. § 1425(b).[9] According to the indictment, Defendant applied for and procured naturalized citizenship between June 7 and September 20, 2019.[10] In completing his naturalization application, the indictment alleges, Defendant knowingly provided false answers to several questions, including whether he had ever been involved in "[k]illing, or trying to kill, someone," "[b]adly hurting, or trying to hurt, a person on purpose," or "[f]orcing, or trying to force, someone to have any kind of sexual contact or relations."[11] The indictment further alleges that Defendant did not

---

[4] The Court takes judicial notice of the docket records in Defendant's related state cases: *State of Alaska v. Smith*, Case No. 3AN-19-09901CR (criminal trial); *Smith v. State of Alaska*, Case No. A14512 (criminal appeal); and *In re Smith*, Case No. 3AN-24-09050CI (post-conviction relief proceedings). Judicial notice is the "court's acceptance, for purposes of convenience and without requiring a party's proof, of a well-known and indisputable fact; the court's power to accept such a fact." Black's Law Dictionary (12th ed. 2024); *see also* Fed. R. Evid. 201; *Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1051 n.3 (9th Cir. 2005) ("Materials from a proceeding in another tribunal are appropriate for judicial notice." (internal quotation marks and citation omitted)).

[5] *State of Alaska v. Smith*, Case No. 3AN-19-09901CR, Docket Event 02/22/2024.

[6] *State of Alaska v. Smith*, Case No. 3AN-19-09901CR, Docket Entries 07/12/2024.

[7] *Smith v. State of Alaska*, Case No. A14512.

[8] *In re Smith*, Case No. 3AN-24-09050CI.

[9] Docket 2.

[10] Docket 2 at 2.

[11] Docket 2 at 2–5.

meet the requirements for naturalization because he was not a person of "good moral character," as evidenced by Defendant having (1) committed "murder, sexual assault, tampering with physical evidence, and misconduct with a corpse through sexual penetration" before and during the period when he was pursuing his naturalization, and (2) given false testimony for the purpose of obtaining naturalization.[12] The indictment notified Defendant that, if convicted of either of the two counts with which he was charged, his naturalization would be revoked pursuant to 8 U.S.C. § 1451(e).[13]

On May 6, 2024, the Court arraigned Defendant on his federal charges, appointed an assistant federal public defender to represent him, and ordered him detained.[14] Defendant has been in custody at facilities administered by the Alaska Department of Corrections ("DOC") for the pendency of this case. Defendant is currently in custody at the Anchorage Correctional Complex ("ACC").

On August 8, 2024, at the request of the government, the Court issued a protective order placing certain restrictions on Defendant's ability to review and retain unredacted discovery containing "protected materials," defined as all items of discovery containing (1) personally identifiable information and (2) information that identifies or can be used to locate any cooperating witness.[15]

In December 2024, Defendant filed 10 pro se documents, including a "Notice of Self Representation" in which he asked the Court to allow him to proceed pro se.[16] Soon afterward, Defendant's attorney moved the Court for a *Faretta* hearing to determine whether Defendant was knowingly and intelligently waiving his Sixth Amendment right to appointed counsel.[17] On December 23, 2024, the Court held a *Faretta* hearing and denied Defendant's request to proceed pro se.[18] However, the Court granted an oral motion by Defendant to appoint new

---

[12] Docket 2 at 6.
[13] Docket 2 at 7.
[14] Docket 10; *see also* Docket 3; Docket 11.
[15] Docket 25; *see also* Docket 14; Docket 16; Docket 23.
[16] Docket 32; Docket 33; Docket 34; Docket 35; Docket 36; Docket 38; Docket 39; Docket 40; Docket 41; Docket 42.
[17] Docket 43.
[18] Docket 46; *see also Faretta v. California*, 422 U.S. 806 (1975).

counsel to represent him.[19] On January 15, 2025, Defendant's new attorney, Timothy Hennessy, entered a notice of appearance on Defendant's behalf.[20] Based on the outcome of the *Faretta* hearing, the Court informed Defendant that it would not take action on his remaining pro se motions due to his status as a represented party.[21]

Between September and November 2025, Defendant filed five pro se motions.[22] The Court rejected these motions on the ground that Defendant was represented by counsel and was therefore not permitted to act on his own behalf.[23] The Court nevertheless reviewed the motions' contents and, based on its assessment that Defendant appeared to be seeking some sort of relief with respect to his representation status, ordered Mr. Hennessy to meet with him and to file an appropriate notice or motion based on their discussion.[24] On December 19, 2025, Defendant, through Mr. Hennessy, filed a status report in which he indicated that he did not wish to proceed pro se.[25]

On January 23, 2026, Defendant filed a pro se motion for a representation hearing in which he asked the Court to either appoint him a new attorney or allow him to represent himself.[26] On February 18, 2026, the Court held a hearing at which it denied Defendant's request for a new attorney and Defendant withdrew his request to represent himself.[27] During this hearing, the Court also heard from Defendant regarding his dissatisfaction with his access to discovery while incarcerated.[28]

---

[19] Docket 46.

[20] Docket 47.

[21] Docket 51; *see also* L. Civ. R. 11.1(a)(3) ("A party who has appeared by counsel may not thereafter act on the party's own behalf in the action unless an order of withdrawal of counsel has been entered by the court."); L. Crim. R. 1.1(b) ("The District of Alaska Local Civil Rules . . . also apply to criminal proceedings, to the extent not inconsistent with [the District of Alaska Local Criminal Rules].").

[22] Docket 62; Docket 67; Docket 69; Docket 70; Docket 71. Defendant also filed two pro se "Notices of Limited Entry of Appearance." Docket 61; Docket 66.

[23] Docket 73.

[24] Docket 73.

[25] Docket 74 at 2.

[26] Docket 79. Defendant also filed two additional pro se motions, which the Court again rejected based on his status as a represented party, and several other miscellaneous pro se documents. Docket 77; Docket 79; Docket 80; Docket 81; Docket 86; Docket 87; Docket 88; Docket 89; Docket 90.

[27] Docket 83.

[28] Docket 84; Docket 85.

On March 17, 2026, Defendant filed a "Notice to Accept Offer of Self Representation" in which he indicated that he wished to proceed pro se.[29] On March 25, 2026, the Court held another representation hearing at which it ultimately granted an oral motion by Defendant to represent himself with the assistance of standby counsel.[30] Defendant stated that he was not willing to accept Mr. Hennessy as standby counsel, so the Court ordered that Mr. Hennessy be relieved from his representation and that a new attorney be appointed to assist Defendant.[31] On April 9, 2026, attorney Timothy Bechtold entered a notice of appearance on Defendant's behalf.[32] Since Defendant elected to represent himself, he has received assistance from Mr. Bechtold as well as Shawn Stendevad, a paralegal.[33]

On April 29, 2026, at the Court's direction, the government filed a discovery management report stating which discovery it had and had not yet disclosed to Defendant.[34] The government asserted that it had disclosed 3,923 pages of discovery in two productions, one in June 2024 and one in October 2024, and that it intended to produce the grand jury transcript to Defendant and Mr. Bechtold by the end of the week.[35] The government further stated that it had not made available to Defendant any digital evidence, though it did not believe there was any outstanding digital discovery in dispute.[36]

On April 30, 2026, the Court held a discovery management conference at which the parties asked the Court to amend the protective order to remove the existing restrictions on Defendant's ability to retain unredacted protected materials produced in discovery.[37] The government stated that such an amendment would allow it to produce unredacted protected materials to Defendant directly, which was appropriate in light of Defendant's pro se status. The Court granted this request on the record and later issued a written amended protective

---

[29] Docket 88.
[30] Docket 96; Docket 97.
[31] Docket 97.
[32] Docket 100.
[33] *See, e.g.*, Docket 106; Docket 112.
[34] Docket 104; Docket 105.
[35] Docket 105 at 1–2.
[36] Docket 105 at 2.
[37] Docket 106.

order consistent with its oral ruling at the discovery management conference.[38]

On May 13, 2026, the Court issued a trial scheduling order setting pretrial deadlines, a final pretrial conference date, and a trial date in this case.[39] As relevant here, the Court set a July 27, 2026 deadline for the parties to file any dispositive motions, scheduled a final pretrial conference for September 22, 2026, and scheduled a trial by jury to begin on October 19, 2026.[40]

On May 28 and June 18, 2026, the Court held additional status conferences to allow the parties to raise any discovery-related issues that might have arisen.[41] At the second of those status conferences, the Court heard from the parties about certain digital discovery with which Defendant was familiar from his state trial but had not yet received from the federal government in the instant case. The government indicated that this evidence had not been in its possession, but that it had requested the evidence from the Anchorage Police Department and would produce it to Defendant once received. In addition, the Court heard from Ms. Stendevad that she was keeping unredacted discovery for Defendant because his "ability to control documents" in custody was limited, that she was visiting him in person so that he could review this discovery, and that she was experiencing difficulties communicating with Defendant by both phone and mail.[42]

On July 5, 2026, Defendant filed an unopposed motion to waive his right to a jury trial and proceed to a bench trial.[43] On July 21, 2026, Defendant filed the instant Motion for Hearing, requesting an "emergency hearing to get on record and attempt to address Anchorage Correctional Complex's continued and intentional disruption of [his] mail and defense preparation."[44] On August 4, 2026, the Court held a status conference at which it granted Defendant's motion for a bench trial and converted the scheduled trial by jury to a trial by

---

[38] Docket 108.
[39] Docket 107.
[40] Docket 107 at 1–2.
[41] Docket 109; Docket 112.
[42] Specifically, Ms. Stendevad stated that she was unable to hear Defendant over the phone and that there were delays in receiving Defendant's mail.
[43] Docket 114.
[44] Docket 116.

court.[45] The Court also heard from Defendant about issues he was having with reviewing discovery while in custody, as well as inconsistencies with his receipt of legal mail.[46]

On July 27, 2026, Defendant filed six substantive motions, including the instant Motion to Dismiss and Motion to Recognize and Remedy Pretrial Prejudice.[47]

## II. LEGAL STANDARDS

### A. Speedy Trial Rights

A defendant who has been indicted in a federal criminal case has both a constitutional and a statutory right to a speedy trial.[48] The constitutional right is set forth in the Sixth Amendment, which guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."[49] The statutory right is conferred by the Speedy Trial Act, which "give[s] effect to this Sixth Amendment right" by requiring that a defendant's trial commence within 70 days of the filing of an indictment or the defendant's first appearance before the court in which charges are pending, "whichever date last occurs."[50]

The Speedy Trial Act requires a court to dismiss the indictment "[i]f [the] defendant's trial does not begin within the requisite time period and the defendant moves for dismissal prior to trial[.]"[51] However, "[t]his rule is tempered by the Speedy Trial Act's exclusion of certain periods of time from the 70-day calculation."[52] In evaluating the reasonableness of delay under the Speedy Trial Act, a court must consider whether the defendant suffered any "actual prejudice" and "whether the delay was necessary to achieve its purpose."[53]

Similarly, in evaluating whether delay has abridged a defendant's Sixth Amendment right to a speedy trial, a court considers (1) the length of the delay, (2) the reasons for the delay, (3)

---

[45] Docket 128.
[46] Docket 128.
[47] Docket 119; Docket 120; *see also* Docket 121; Docket 122; Docket 123; Docket 124.
[48] *See United States v. Lonich*, 23 F.4th 881, 891 (9th Cir. 2022) ("Criminal defendants enjoy certain protections from post-indictment delays. Some are statutory, codified in the Speedy Trial Act. Others are constitutional, rooted in the Sixth Amendment's Speedy Trial Clause." (citations omitted)).
[49] U.S. Const. amend. VI.
[50] *United States v. Olsen*, 21 F.4th 1036, 1040 (9th Cir. 2022); 18 U.S.C. § 3161(c)(1).
[51] *Messer*, 197 F.3 at 336 (citing 18 U.S.C. § 3162(a)(2)).
[52] *Id.* (citing 18 U.S.C. § 3161(h)).
[53] *United States v. Hall*, 181 F.3d 1057, 1062 (9th Cir. 1999).

the accused's assertion of the right to speedy trial, and (4) the prejudice caused by the delay.[54] No one of these factors is necessary or sufficient and there is no affirmative demonstration of prejudice necessary to prove a violation of the constitutional right to a speedy trial; instead, the four related factors "must be considered together with such other circumstances as may be relevant."[55] The first factor is a two-part "triggering mechanism" for the remainder of the analysis.[56] A defendant must first "show that the period between indictment and trial passes a threshold point of 'presumptively prejudicial' delay."[57] If the defendant fails to do so, the inquiry ends and the district court does not examine the remaining three factors.[58] "If, however, the threshold showing is made, the court considers the extent to which the delay exceeds the threshold point in light of the degree of diligence by the government and acquiescence by the defendant to determine whether sufficient prejudice exists to warrant relief."[59]

### B. Fifth Amendment Protection From Undue Pre-Indictment Delay

"The Fifth Amendment guarantees that defendants will not be denied due process as a result of excessive pre-indictment delay."[60] To prove a claim for the denial of due process because of pre-indictment delay, a defendant must show both (1) "actual, non-speculative prejudice from the delay," and (2) that, weighing the length of the delay against the reasons for it, the delay "offends those 'fundamental conceptions of justice which lie at the base of our civil and political institutions.'"[61] "[E]stablishing prejudice is a 'heavy burden' that is rarely met."[62] "Generalized assertions of the loss of memory, witnesses, or evidence are insufficient

---

[54] *Barker v. Wingo*, 407 U.S. 514, 530 (1972).
[55] *Moore v. Arizona*, 414 U.S. 25, 26 (1973) (per curiam) (citation omitted).
[56] *Lonich*, 23 F.4th at 893.
[57] *United States v. Beamon*, 992 F.2d 1009, 1012 (9th Cir. 1993) (quoting *Doggett v. United States*, 505 U.S. 647, 652 (1992)).
[58] *Id.*
[59] *Id.*
[60] *United States v. Corona-Verbera*, 509 F.3d 1105, 1112 (9th Cir. 2007) (quoting *United States v. Sherlock*, 962 F.2d 1349, 1353 (9th Cir. 1989)).
[61] *Id.* (first quoting *United States v. Huntley*, 976 F.2d 1287, 1290 (9th Cir. 1992); and then quoting *Sherlock*, 962 F.2d at 1353–54); *see also id.* (explaining that second prong of this test applies only if the defendant establishes actual prejudice).
[62] *Id.* (quoting *Huntley*, 976 F.2d at 1290).

to establish actual prejudice."[63]

### C. Sixth Amendment Rights to Counsel and Self-Representation

"The Sixth Amendment guarantees 'that a person brought to trial in any state or federal court must be afforded the right to the assistance of counsel before he can be validly convicted and punished by imprisonment.'"[64] "It also guarantees a criminal defendant the 'constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so.'"[65] "Accordingly, a defendant 'has two correlative and mutually exclusive Sixth Amendment rights: the right to have counsel, on one hand, and the right to refuse counsel and represent himself, on the other,' and can waive either right so long as the waiver is knowing and intelligent."[66]

When a criminal defendant is represented by counsel and the government "deliberately interferes with the confidential relationship between [the] defendant and defense counsel, that interference violates the Sixth Amendment right to counsel if it substantially prejudices the . . . defendant."[67] "Substantial prejudice results from the introduction of evidence gained through the interference against the defendant at trial, from the prosecution's use of confidential information pertaining to defense plans and strategy, and from other actions designed to give the prosecution an unfair advantage at trial."[68] "[T]here is no Sixth Amendment violation unless there is prejudice."[69] The remedy "characteristically imposed" for a violation of a defendant's Sixth Amendment right to counsel is suppression, not dismissal of the indictment.[70]

When an incarcerated criminal defendant has waived their right to counsel, the Sixth Amendment requires that the defendant "be afforded reasonable access to 'law books,

---

[63] *United States v. Manning*, 56 F.3d 1188, 1194 (9th Cir. 1995).
[64] *United States v. Turner*, 897 F.3d 1084, 1102 (9th Cir. 2018) (quoting *Faretta*, 422 U.S. at 807).
[65] *Id.* at 1102–03 (quoting *Faretta*, 422 U.S. at 807).
[66] *Id.* (quoting *United States v. Gerritsen*, 571 F.3d 1001, 1007 (9th Cir. 2009)).
[67] *Nordstrom v. Ryan*, 762 F.3d 903, 910 (9th Cir. 2014) (first quoting *Williams v. Woodford*, 384 F.3d 567, 584–85 (9th Cir. 2004); and then citing *United States v. Irwin*, 612 F.2d 1182, 1186–87 (9th Cir. 1980)).
[68] *Williams*, 384 F.3d at 585 (citing *Irwin*, 612 F.2d at 1187).
[69] *United States v. Danielson*, 325 F.3d 1054, 1069 (9th Cir. 2003), as amended (May 19, 2003).
[70] *United States v. Morrison*, 449 U.S. 361, 365 (1981).

witnesses, or other tools to prepare a defense.'"[71] "Th[is] right of access is not unlimited, but must be balanced against the legitimate security needs or resource constraints of the prison."[72] In imposing restrictions on a self-represented defendant's right of access, "the government 'may not unreasonably hinder the defendant's efforts to prepare his own defense.'"[73] As with any Sixth Amendment claim, an incarcerated pro se defendant attempting to prove that the government has denied them reasonable access to legal materials must demonstrate "specific prejudice" beyond mere "inconvenien[ce]," such as "not being able to locate a particular document necessary for trial preparation."[74]

### D. Trial Courts' Jurisdiction in Criminal Proceedings

In federal criminal proceedings, trial courts generally lack jurisdiction to consider a defendant's claims if those claims relate solely to the defendant's conditions of confinement.[75] Typically, "[t]he appropriate remedy" for such claims "lies in a civil rights action," not in the underlying criminal case.[76] A narrow exception to this rule exists where a defendant's conditions of confinement violate their Sixth Amendment right to counsel.[77] In such cases, the trial court has limited authority to redress claims that implicate the defendant's access to counsel or ability to prepare their defense.[78]

---

[71] *United States v. Sarno*, 73 F.3d 1470, 1491 (9th Cir. 1995) (quoting *Milton v. Morris*, 767 F.2d 1443, 1446 (9th Cir. 1985)).

[72] *Id.* (first citing *Robinson*, 913 F.2d at 717; then citing *Lindquist v. Idaho State Bd. of Corr.*, 776 F.2d 851, 858 (9th Cir. 1985); and then citing *Milton*, 767 F.2d at 1446–47); *see also United States v. Wilson*, 690 F.2d 1267, 1271 (9th Cir. 1981) ("[A] criminal defendant who exercises his right to reject counsel necessarily relinquishes many of the benefits associated with representation by counsel.").

[73] *United States v. Brugnara*, 856 F.3d 1198, 1210 (9th Cir. 2017).

[74] *Brugnara*, 856 F.3d at 1210.

[75] *Badea v. Cox*, 931 F.2d 573, 574 (9th Cir. 1991) ("A civil rights action [pursuant to 42 U.S.C. § 1983] . . . is the proper method of challenging 'conditions of . . . confinement.'" (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 498–99 (1973))).

[76] *See Greenhill v. Lappin*, 376 F. App'x 757, 757 (9th Cir. 2010).

[77] *See Falcon v. U.S. Bureau of Prisons*, 52 F.3d 137, 139 (7th Cir. 1995) (holding that if a defendant's Sixth Amendment right to counsel "is being infringed, [the district judge] has the statutory authority to protect [the defendant's] access to counsel"); *United States v. Loera*, No. CR 13-1876 JB, 2017 WL 3098257, at *27–28 (D.N.M. June 22, 2017); *United States v. Wade*, No. 3:07-cr-00111-RRB-JDR, 2009 WL 3837151, at *1 (D. Alaska Nov. 13, 2009).

[78] *See, e.g.*, *United States v. Yandell*, No. 2:19-CR-00107-KJM, 2021 WL 4777113, at *3 (E.D. Cal. Oct. 13, 2021); *United States v. Ortega*, No. 2:22-CR-00176-LK, 2025 WL 2822242, at *3 (W.D. Wash. Oct.

### E. Requests for Continuances

A district court may grant an ends-of-justice continuance under the Speedy Trial Act upon finding that the ends of justice served outweigh the public's and the defendant's interest in a speedy trial.[79] To grant such a continuance, a district court must satisfy two requirements: "(1) the continuance must be specifically limited in time; and (2) it must be justified on the record with reference to the facts as of the time the delay is ordered."[80] The court

> must conduct an appropriate inquiry to determine whether the various parties actually want and need a continuance, how long a delay is actually required, what adjustments can be made with respect to the trial calendars or other plans of counsel, and whether granting the requested continuance would outweigh the best interest of the public and the defendants in a speedy trial.[81]

In conducting this "fact-bound" inquiry, relevant considerations may include (1) the defendant's diligence in preparing their defense prior to the trial date; (2) whether the continuance would have satisfied the defendant's needs; (3) the inconvenience a continuance would cause the court, witnesses, counsel, and the government; and (4) the extent to which the defendant might suffer harm as a result of the denial of a continuance.[82] A continuance may be appropriate where denial would deny a defendant "the reasonable time necessary for effective preparation, taking into account the exercise of due diligence."[83] Where a criminal

---

3, 2025); *see also United States v. Carlos Martin*, No. 2:18-CR-158-FtM-66NPM, 2020 WL 4504949, at *1 (M.D. Fla. Aug. 5, 2020) ("[T]o prevent circumvention of the obligation to exhaust administrative remedies before seeking judicial relief, and to ensure that the persons responsible for the custody and care of the defendant are properly notified and brought before the court, any complaints about the conditions of confinement that do not concern a defendant's access to counsel or the ability to prepare a defense must be pursued in a separate civil action and not by motion in the defendant's criminal case.").

[79] 18 U.S.C. § 3161(h)(7)(A).

[80] *United States v. Lewis*, 611 F.3d 1172, 1176–77 (9th Cir. 2010) (first quoting *United States v. Messer*, 197 F.3d 330, 337 (9th Cir. 1999); and then quoting *United States v. Lloyd*, 125 F.3d 1263, 1268 (9th Cir. 1997)).

[81] *Id.* (internal quotation marks omitted) (quoting *Lloyd*, 125 F.3d at 1269).

[82] *See United States v. Kloehn*, 620 F.3d 1122, 1126–27 (9th Cir. 2010); *see also United States v. Mejia*, 69 F.3d 309, 316 (9th Cir. 1995) (stating that fourth factor is most critical on appeal when reviewing decision to deny continuance).

[83] 18 U.S.C. § 3161(h)(7)(B)(iv).

defendant is self-represented, this ground for a continuance encompasses the defendant's right to represent themselves "meaningfully," which requires that they be afforded adequate time to prepare.[84]

A district court has "broad discretion" in deciding whether to grant or deny a requested continuance.[85]

## III. DISCUSSION

### A. Motion to Dismiss or Continue

In his Motion to Dismiss or Continue at Docket 119, Defendant primarily asks the Court to dismiss the indictment against him due to an "accumulating set of problems," namely: (1) "recurring interference with legal mail and attorney communications," including "misrouting of calls and correspondence to another Brian [Steven] Smith" in DOC custody; (2) "limitations on discovery retention and review"; and (3) "the loss of two material witnesses before trial."[86] Based on these same grounds, as well as "continuing disputes" over evidentiary issues, Defendant asks the Court to alternatively continue trial.[87] In response, the government generally asserts that none of these grounds provide a basis for Defendant's requested relief, even if Defendant's "unsupported allegations . . . were taken at face value."[88]

#### 1. Defendant's request for dismissal of the indictment should be denied.

The Court first considers Defendant's request for dismissal of the indictment based on the initial three grounds outlined in his motion. Generously construed, it appears that Defendant is attempting to allege violations of his Sixth Amendment right to counsel, his Sixth Amendment or statutory right to a speedy trial, or his Fifth Amendment due process guarantee

---

[84] *United States v. Farias*, 618 F.3d 1049, 1053 (9th Cir. 2010).

[85] *United States v. Wills*, 88 F.3d 704, 711 (9th Cir. 1996) (quoting *United States v. Gonzalez-Rincon*, 36 F.3d 859 (9th Cir. 1994)).

[86] Docket 119 at 1, 12. Defendant further asks the Court to "order preservation and production of all mail logs, envelope images, call-routing records, voicemail records, property logs, grievance materials, and any footage relevant to legal mail handling or attorney calls; [and to] set deadlines for full litigation of the interrogation-video, SD-card, Franks, Brady/Giglio, and related evidentiary issues[.]" Docket 119 at 12. [move to end of section?]

[87] Docket 119 at 1.

[88] Docket 131 at 4–5.

against excessive pre-indictment delay. However, the allegations made in Defendant's motion neither establish any of these violations nor otherwise justify the "disfavored remedy" of dismissal.[89]

First, Defendant has not demonstrated that the way in which the DOC has handled his legal mail and attorney communications violates his Sixth Amendment rights. Defendant alleges that he has not received all the documents he should have received from the Court, that at least two other pieces of legal mail from Ms. Stendevad had been "misrouted," and that a call from Ms. Stendevad in May 2026 was misrouted to a different inmate in DOC custody who is also named Brian Steven Smith.[90] Defendant submits some evidence, including contemporaneous complaints that he made to DOC officials, to support his allegations.[91] However, the Court agrees with the government that any issues Defendant is currently experiencing in this regard do not violate his Sixth Amendment right to counsel, given that he has knowingly waived that right and elected to represent himself.[92] Moreover, insofar as Defendant experienced the alleged problems when he was represented by counsel, he has not shown that the government deliberately intruded into his confidential relationship with any of his attorneys, or that any intrusion has prejudiced him.[93] Rather, as Defendant himself submits, the issues he has experienced with his legal mail and attorney communications largely appear to be the result of DOC administrative errors caused by another inmate sharing the same name as Defendant.[94] Such errors do not constitute the type of deliberate government conduct that could give rise to a violation of Defendant's Sixth Amendment rights.

Second, and similarly, Defendant has not shown that restrictions on his ability to retain

---

[89] *See United States v. Struckman*, 611 F.3d 560, 577 (9th Cir. 2010) ("[R]emedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests. Because it is a drastic step, dismissing an indictment is a disfavored remedy." (first quoting *United States v. Morrison*, 449 U.S. 361, 364 (1981); and then quoting *United States v. Rogers*, 751 F.2d 1074, 1076–77 (9th Cir. 1985))).

[90] Docket 119 at 9.

[91] Docket 120-1 at 3, 5.

[92] *See* Docket 131 at 4.

[93] *See Nordstrom*, 762 F.3d at 910; *Williams*, 384 F.3d at 585.

[94] *See* Docket 119 at 2; *see also* Docket 120-2.

or review discovery violate his Sixth Amendment rights. Defendant suggests that he cannot adequately prepare a defense because he is "unable to independently retain and review protected discovery outside [his] meetings" with Ms. Stendevad, and because of his aforementioned legal mail and attorney communication difficulties.[95] As an initial matter, Defendant had no constitutional right to "personally review all discovery produced by the Government" during the period when he was represented by counsel in this case.[96] And in the time following Defendant's decision to represent himself, Defendant has not identified any restrictions on his access to legal materials in custody that give the Court pause, or any specific restrictions that have prevented him from taking any particular action in this case. From what the Court can tell, the DOC allows Defendant to possess in his cell one box or tote of legal materials at a time, and the DOC accommodates Defendant's requests to exchange one box or tote for another.[97] Moreover, Defendant acknowledges that Ms. Stendevad's assistance—including researching, drafting motions, and meeting with Defendant to review discovery—has mitigated the effect of DOC limitations on the amount of legal materials he can possess in his cell.[98] Although it would almost certainly be more convenient for Defendant to enjoy unlimited access to his discovery, that is not what the Sixth Amendment requires.[99] Indeed, the Ninth Circuit has "approv[ed] significant restrictions on [such] access," including "limiting a pro se defendant to one-sixth of the legal materials he possessed . . . ."[100] Here, Defendant has not established that any restrictions on his access to discovery are unreasonable in violation of the Sixth Amendment.

And third, Defendant has not demonstrated that any delay in bringing or litigating this case violates his Fifth Amendment or speedy trial rights. Defendant suggests that "the State's delay resulted in the loss of one material witness before trial and the fading memory of

---

[95] Docket 119 at 3.

[96] *See United States v. Kvashuk*, No. CR19-0143JLR, 2020 WL 569862, at *4 (W.D. Wash. Feb. 5, 2020) (collecting cases).

[97] Docket 120 at 12; Docket 120-5 at 6.

[98] Docket 119 at 3. The Court further notes that the protective order in this case no longer limits Defendant's ability to personally retain discovery. *See* Docket 108.

[99] *See Sarno*, 73 F.3d at 1491.

[100] *Brugnara*, 856 F.3d at 1211 (citing *Robinson*, 913 F.2d at 717–18).

another."[101] Defendant asserts that the deceased witness "was allegedly favorable to the defense," and that the second witness "could no longer remember the critical events" when she was "interviewed."[102] But at no point does Defendant identify when the relevant events occurred, or how, specifically, they were prejudicial in the context of the federal charges he faces. Nor does Defendant offer any evidence to support his assertions. In addition, aside from the conclusory statement that the death of the first witness "is classic speedy-trial prejudice,"[103] he provides no legal argument to support any claim for the violation of his right to a speedy trial under the Sixth Amendment or the Speedy Trial Act, or for undue pre-indictment delay under the Fifth Amendment.[104] Defendant's unadorned assertions simply do not suffice to show that any such violation occurred.[105]

With respect to any constitutional speedy trial claim that Defendant intends to make, the Court further observes that the record does not support such a claim. Although approximately 29 months have passed since Defendant was indicted, Defendant bears primary responsibility for the delays in bringing this case to trial, as he has sought or joined in numerous requests for continuances,[106] and he sought and received multiple different attorneys to

---

[101] Docket 119 at 4.
[102] Docket 119 at 4.
[103] Docket 119 at 4.
[104] *Cf. Manning*, 56 F.3d at 1194 (holding that district court did not abuse its discretion by denying dismissal based on pre-indictment delay where defendant argued that "a potential 'key witness' for his defense had died," explaining that defendant made no showing "regarding what the deceased witness would have said").
[105] Although it is unclear whether Defendant intends to raise a Speedy Trial Act claim, the Court notes that the statutory clock has not come close to running due to the numerous exclusions of time that the Court has made, to which Defendant has agreed, or that have otherwise been triggered by events in this case. *See, e.g.*, Docket 13; Docket 21; Docket 26; Docket 52; Docket 56; Docket 57; Docket 76; Docket 102; *see also* 18 U.S.C. § 3161(h)(1)(D) (establishing exclusion for "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion"), 3161(h)(1)(H) (establishing exclusion for "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court"), 3161(h)(7)(A) (establishing exclusion for "[a]ny period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial").
[106] *See, e.g.*, Docket 52; Docket 56; Docket 59; Docket 75; Docket 102.

represent him before eventually choosing to represent himself.[107] Meanwhile, the government appears to have been diligent in producing discovery, having produced the vast bulk of it within six months of Defendant's indictment.[108] In addition, Defendant has not demanded a speedy trial; even now, his filings suggest that he may not feel adequately prepared to defend himself if trial proceeds as scheduled.[109]

Because Defendant has shown no basis under which the Court could dismiss the indictment against him, the Court recommends that his Motion to Dismiss or Stay be denied with respect to Defendant's request for dismissal.

**2. The undersigned defers to the District Judge for a ruling on Defendant's request for a continuance of the trial date.**

The Court next addresses Defendant's request for a continuance of trial. Defendant contends that if dismissal is not appropriate, the Court should continue trial for a "reasonable period" to allow him to fully litigate two sets of evidentiary issues.[110] Specifically, Defendant asserts, he needs more time to perform a "completeness, authenticity, and context review" necessary to challenge an edited interrogation video that the government intends to use at trial.[111] Defendant further maintains that he needs more time to litigate "the SD-card story and the integrity of the chain of custody[,]" suggesting that he might be entitled to relief because a certain witness "changed her account and . . . the timeline concerning the SD card, file creation dates, and the discovery of the cards in Defendant's wallet is inconsistent."[112]

Because the decision whether to grant or deny a requested continuance is within the

---

[107] *See, e.g.*, Docket 46; Docket 97.

[108] Docket 105 at 1–2.

[109] On January 15, 2026, Defendant, who was still represented by counsel at the time, filed a pro se "Notice of Assertion of Speedy Trial Violation" in which he suggested that he believed the indictment should be dismissed based on a violation of his right to a speedy trial. Docket 81. However, Defendant did not express a desire to proceed to trial or otherwise invoke his speedy trial rights.

[110] Docket 119 at 1, 12. Defendant further asks the Court to "order preservation and production of all mail logs, envelope images, call-routing records, voicemail records, property logs, grievance materials, and any footage relevant to legal mail handling or attorney calls; [and to] set deadlines for full litigation of the interrogation-video, SD-card, Franks, Brady/Giglio, and related evidentiary issues[.]" Docket 119 at 12. [move to end of section?]

[111] Docket 119 at 10.

[112] Docket 119 at 10–11.

district court's broad discretion,[113] the Court defers to the District Judge for a ruling on Defendant's request. In the interest of assisting the District Judge in making that decision, however, the Court makes the following observations.

On the record before the Court, it would be within the District Judge's discretion to either grant or deny Defendant's request for a continuance. This case has been pending for about 29 months. During the last six months, Defendant has represented himself with the assistance of appointed standby counsel and a paralegal. Defendant has simultaneously been involved in an appeal of his state criminal judgment, as well as a state post-conviction relief proceeding, though he is represented by counsel in both of those cases. Since choosing to represent himself in this federal case, Defendant has actively prepared his defense, including by filing numerous substantive motions.[114]

Although Defendant has experienced various logistical obstacles by virtue of being in custody, it is not obvious how those obstacles have affected his ability to defend this case. The record shows that Defendant has experienced delays in receiving certain items of legal mail, but not that Defendant wholly failed to receive any particular items that are relevant to this federal criminal case. Similarly, although Defendant has had some difficulty communicating with Ms. Stendevad over the phone, Ms. Stendevad is regularly meeting with Defendant to assist him in preparing his defense. In addition, while Defendant does not have unfettered control over the discovery he can possess in his cell, he has had access to discovery for nearly two years. And although Defendant maintains that a continuance is warranted so that he can litigate specific evidentiary issues, it appears that Defendant has already raised those same issues in two motions in limine.[115]

For these reasons, Defendant has not clearly set forth his need for additional time to prepare his defense. But because Defendant is representing himself, and because the government has not expressly stated whether it opposes a continuance, the Court recommends

---

[113] *See Wills*, 88 F.3d at 711.
[114] Docket 99; Docket 119; Docket 120; Docket 121; Docket 122; Docket 123; Docket 124.
[115] Docket 121; Docket 122; *see also* Docket 138 at 10–15.

that the District Judge exercise his discretion on Defendant's request after inquiring and making findings on the record as to the propriety of a continuance.

### B. Motion to Recognize and Remedy Pretrial Prejudice

In his Motion to Recognize and Remedy Pretrial Prejudice at Docket 120, Defendant reiterates his complaints about "prejudice to his defense caused by repeated interference with confidential attorney communications, legal mail, telephone access, and practical access to discovery while he is incarcerated."[116] Like in his Motion to Dismiss or Continue, Defendant contends that these issues violate his Sixth Amendment rights to counsel or meaningful self-representation.[117] Defendant further alleges that DOC staff are unlawfully reading confidential legal mail between him and his attorney.[118]

The main difference between this motion and Defendant's Motion to Dismiss or Continue lies in the relief sought. Defendant asks the Court to remedy the "ongoing prejudice" by issuing a "tailored order to protect [his] constitutional rights and preserve the integrity of the case."[119] Specifically, Defendant seeks an order "requiring confidentiality, correct routing of legal mail, proper handling of attorney calls, preservation of logs and footage, and workable discovery access."[120]

Despite the different request for relief, Defendant's Motion to Recognize and Remedy Pretrial Prejudice lacks merit for the same reasons as those that warrant denying his Motion to Dismiss or Continue.[121] That is, Defendant has failed to plausibly allege, let alone prove, any violation of his Sixth Amendment rights that could entitle him to the type of relief he seeks. Therefore, it would be inappropriate for the Court to interfere with the DOC's administration of its facilities by requiring that it accommodate Defendant's preferences.[122] The Court's

---

[116] Docket 120 at 1.
[117] Docket 120 at 6–7; Docket 138 at 2–6.
[118] Docket 120 at 7.
[119] Docket 120 at 8.
[120] Docket 120 at 8; *see also* Docket 138 at 8–9 (elaborating on requested procedure for handling of legal mail).
[121] *See supra* part III.A.1.
[122] *Cf. Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (recognizing "the legitimate interests that stem

limited authority to redress issues related to Defendant's conditions of confinement within the scope of this criminal case simply does not extend to a situation such as this, where Defendant has not presented specific facts suggesting that any constitutional violation has likely occurred or is likely occurring.

The Court therefore recommends that Defendant's Motion to Recognize and Remedy Pretrial Prejudice be denied.

### C. Motion for Hearing

In his Motion for Hearing at Docket 116, Defendant requests "an emergency hearing to get on record and attempt to address Anchorage Correctional Complex's continued and intentional disruption of [his] mail and defense preparation."[123] Defendant argues that "ACC's actions have resulted in numerous delays and unnecessary representation hearings which amounts to serious constitutional violations which if not addressed could be considered as a waiving of [his] rights and/or entrapment."[124]

Because the issues raised in Defendant's Motion for Hearing appear to be the same as those raised in his Motion to Dismiss or Continue and his Motion to Recognize and Remedy Pretrial Prejudice, the Court construes the motion as a request for an evidentiary hearing on those issues. As the Court has explained, however, Defendant has not alleged specific facts that could establish a redressable constitutional violation. Without such an initial showing, the Court sees no basis to hold an evidentiary hearing.[125] The Court thus recommends that

---

from the government's need to manage the facility in which [an] individual is detained," and propriety of deferring to "policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security" (internal quotation marks and alterations omitted) (quoting *Bell v. Wolfish*, 441 U.S. 520, 540, 547 (1979))); *Mangiaracina v. Penzone*, 849 F.3d 1191, 1197 (9th Cir. 2017) ("[Courts] defer to the judgment of corrections authorities, particularly with regard to matters of security, because [they] recognize that running a prison or jail is an inordinately difficult undertaking with which prison or jail authorities have particular expertise." (internal quotation marks and alterations omitted)).

[123] Docket 116 at 1; *see also* Docket 138 at 6. Defendant also asks a judge other than the undersigned to handle this motion. Because the Court has already rejected Defendant's motion to recuse the undersigned, this request is denied. *See* Docket 115; Docket 130.

[124] Docket 116 at 1.

[125] *Cf. United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000) (explaining, in context of motion to suppress, that "[a]n evidentiary hearing . . . need be held only when the moving papers allege facts with

Defendant's Motion for Hearing be denied.

## IV. CONCLUSION

For the foregoing reasons, the Court recommends that Defendant's motions at Dockets 116, 119, and 120 be **DENIED** except with respect to Defendant's request at Docket 119 for a continuance of the trial date. On that limited matter, the Court recommends only that the District Judge exercise his discretion on Defendant's request after inquiring and making findings on the record as to the propriety of a continuance.

DATED this 21st day of September, 2026, at Anchorage, Alaska.

/s/ Kyle F. Reardon
KYLE F. REARDON
United States Magistrate Judge
District of Alaska

## NOTICE OF RIGHT TO OBJECT

Under 28 U.S.C. § 636(b)(1), a district court may designate a magistrate judge to hear and determine matters pending before the Court. For dispositive matters, a magistrate judge reports findings of fact and provides recommendations to the presiding district court judge.[126] A district court judge may accept, reject, or modify, in whole or in part, the magistrate judge's findings and recommendations.[127]

A party may file written objections to the magistrate judge's findings and recommendations within fourteen (14) days.[128] A response to the objections may be filed within seven (7) days after any objection is filed.[129] Objections and responses are limited to

sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist").

[126] 28 U.S.C. § 636(b)(1)(B).

[127] *Id.* § 636(b)(1)(C).

[128] *Id.*; L.M.J.R. 7(a)(1).

[129] L.M.J.R. 7(a)(2).

five (5) pages in length and should not merely reargue positions previously presented. Rather, objections and responses should specifically identify the findings or recommendations objected to, the basis of the objection, and any legal authority in support. Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the district court's judgment.[130]

[130] *See Hilliard v. Kincheloe*, 796 F.2d 308 (9th Cir. 1986).