**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

UNITED STATES OF AMERICA,

Plaintiff,

v.

BRIAN STEVEN SMITH,

Defendant.

Case No. 3:24-cr-00040-ACP-KFR

## REPORT AND RECOMMENDATION RE MOTIONS AT DOCKET 123

Before the Court is a Motion for a Franks Hearing, to Suppress Evidence Derived From Search Warrants ("Motion") filed by self-represented Defendant Brian Steven Smith.[1] The government responded in opposition,[2] and Defendant replied.[3] For the reasons explained below, the Court recommends that Defendant's Motion be **DENIED**.

## I. BACKGROUND

### A. Facts

On September 30, 2019, a doctor called the Anchorage Police Department ("APD") to report that one of his patients, V.C., told him she had found an SD card containing videos of a woman being strangled.[4] The doctor said V.C. told him she had found the SD card on the ground near 13th Avenue and Fairbanks Street in Anchorage.[5] An APD officer responded, took an initial statement from V.C., took the SD card from V.C., and brought V.C. to APD headquarters to be interviewed by Detective Brendan Lee.[6]

In her initial interview with Detective Lee, V.C. stated that she had found the SD card

---

[1] Docket 123.
[2] Docket 131.
[3] Docket 138. The Court allowed Defendant to reply pursuant to Local Criminal Rule 47.1(d). Docket 135.
[4] Docket 139-1 at 6, ¶ 5.
[5] Docket 139-1 at 6, ¶ 5.
[6] Docket 139-1 at 6, ¶¶ 5–6.

two days earlier and put it into her phone.[7] V.C. reported that the SD card contained a folder labeled "homicide," and that this folder contained photos and videos dated between September 3 and 5 that depicted "some really sick shit."[8] According to V.C., there were videos of a man beating and raping a woman on a hotel room floor, a video or photo of the man putting his foot on the woman's throat, photos of the woman "spread eagle [and] naked," a photo of the woman "half off and on the bed with a sheet over her," a photo of a luggage cart carrying the woman's naked body covered with a sheet, photos of the woman in the back of what V.C. assumed was the man's pickup truck, with the tailgate down.[9] V.C. said that the videos showed the man slapping the woman, fondling her, and talking to her, though the woman did not say anything.[10] V.C. stated that at one point, the man crossed what appeared to be a wire around the woman's neck, which made a sound.[11] V.C. said that the woman stopped moving afterward, though the woman had "not really" been moving before then either.[12]

V.C. stated that the videos did not show the man's face, but she could hear that the man had a foreign accent.[13] V.C. further said that she had not watched all of the videos, but in the parts she had seen, she had heard the man say, "Chapter one, take one," and "You must want to get murdered tonight because you're not leaving this hotel because I'm going to murder you."[14] V.C. also said that she did not recognize the woman because she was "so beaten up."[15] V.C. explained that she did not call APD immediately after she saw the photos and videos because she had not been sure whether they were real.[16] However, V.C. said that she eventually came to believe the photos and videos might be real, and that she had been having nightmares and difficulty sleeping since seeing them.[17]

---

[7] Docket 139-1 at 6, ¶ 7.
[8] Docket 139-1 at 6, ¶ 7.
[9] Docket 139-1 at 6, ¶ 7.
[10] Docket 139-1 at 6, ¶ 7.
[11] Docket 139-1 at 6, ¶ 7.
[12] Docket 139-1 at 6, ¶ 7.
[13] Docket 139-1 at 6–7, ¶ 7.
[14] Docket 139-1 at 6, ¶ 7.
[15] Docket 139-1 at 6–7, ¶ 7.
[16] Docket 139-1 at 7, ¶ 7.
[17] Docket 139-1 at 7, ¶ 7.

In addition, V.C. explained how she had found the SD card. V.C. first told Detective Lee that she had found the SD card on the ground across the street from a supermarket on Gambell Street.[18] V.C. said that the SD card had been on the sidewalk on 13th Avenue, across the street from the north side of the supermarket and near an abandoned building.[19] Later on, when Detective Lee asked V.C. to point out on a map where she had found the SD card, she pointed to a parking lot at the northwest corner of 13th Avenue and Fairbanks Street.[20] V.C. then said the SD card had been in the parking lot, not on the sidewalk, and marked a spot on the map where she claimed she had found it.[21] V.C. further said that it had been dark when she came across the SD card, and that in the past she had found other SD cards that contained music.[22]

On October 2, 2019, Detective Lee re-interviewed V.C. about the circumstances of her discovery of the SD card.[23] Detective Lee told V.C. that "this was a very serious case" and that she "needed to be completely honest with [APD] about where she had found the card."[24] V.C. initially stayed with her original story but ultimately admitted that she had stolen the SD card from the man whose voice could be heard on the videos.[25] V.C. stated that the man had picked her up around 13th Avenue and Fairbanks Street and then drove her to a gas station nearby, where the man went inside to withdraw cash.[26] V.C. said that while the man was inside, she saw the SD card on top of the vehicle's center console and took it.[27] According to V.C., the man noticed that the SD card was missing upon his return and asked her if she had taken it.[28] V.C. said that she denied taking the SD card and told the man that it must have fallen between

---

[18] Docket 139-1 at 6, ¶ 7.
[19] Docket 139-1 at 6, ¶ 7.
[20] Docket 139-1 at 6–7, ¶ 7.
[21] Docket 139-1 at 7, ¶ 7.
[22] Docket 139-1 at 6–7, ¶ 7.
[23] Docket 139-1 at 7, ¶ 8.
[24] Docket 139-1 at 7, ¶ 8.
[25] Docket 139-1 at 7, ¶ 8.
[26] Docket 139-1 at 7, ¶ 8.
[27] Docket 139-1 at 7, ¶ 8.
[28] Docket 139-1 at 8, ¶ 8.

the seats.[29] V.C. stated that the man was concerned about the SD card and told her that his "work" was on the card.[30]

Based on this information, on October 8, 2019, Detective Jade Baker applied for a warrant to search the SD card for evidence of homicide.[31] In her affidavit submitted in support of the search warrant application, Detective Baker also included a summary of V.C.'s criminal history, which included multiple convictions for theft, assault, and prostitution.[32] A state magistrate judge granted the requested search warrant.[33] Law enforcement executed the warrant and found photos and videos consistent with V.C.'s account.[34]

Later that month, the State of Alaska charged Defendant with multiple criminal offenses, including murder, evidence tampering, and various sex crimes.[35] Defendant was arrested and jailed. A correctional officer subsequently found another SD card in the wallet that Defendant had on him when he arrived at the jail.[36] The SD card was the same make and size as the one that V.C. had given to law enforcement.[37] According to the government, law enforcement obtained a search warrant for the SD card in Defendant's wallet, but the search conducted pursuant to that warrant yielded nothing of evidentiary value.[38]

In February 2024, at Defendant's state trial, V.C. testified that the SD card she gave to APD had not come from Defendant's vehicle, as she had previously told Detective Lee. Rather, V.C. testified, she had taken a phone from Defendant's car, found videos and photos

---

[29] Docket 139-1 at 8, ¶ 8.
[30] Docket 139-1 at 8, ¶ 8.
[31] Docket 139-1 at 1–3 (Search Warrant No. 3AN-19-3382SW).
[32] Docket 139-1 at 8, ¶ 9.
[33] Docket 138-1 at 3.
[34] Docket 139-1 at 4.
[35] The Court takes judicial notice of the docket records in Defendant's state criminal case, *State of Alaska v. Smith*, Case No. 3AN-19-09901CR. Judicial notice is the "court's acceptance, for purposes of convenience and without requiring a party's proof, of a well-known and indisputable fact; the court's power to accept such a fact." Black's Law Dictionary (12th ed. 2024); *see also* Fed. R. Evid. 201; *Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1051 n.3 (9th Cir. 2005) ("Materials from a proceeding in another tribunal are appropriate for judicial notice." (internal quotation marks and citation omitted)).
[36] Docket 123-6 at 1.
[37] Docket 123-6 at 1.
[38] Docket 131 at 13 (referencing search warrant 3AN-19-340SW).

on it, and transferred the videos and photos from the phone to the SD card.[39]

### B. Procedural History

On April 16, 2024, a grand jury returned an indictment charging Defendant with one count of Unlawful Procurement of Naturalization, in violation of 18 U.S.C. § 1425(a), and one count of Unlawful Procurement of Naturalization by an Ineligible Person, in violation of 18 U.S.C. § 1425(b).[40]

On July 27, 2026, Defendant filed six substantive motions, including the instant Motion.[41]

## II. LEGAL STANDARDS

The Fourth Amendment prohibits unreasonable searches and seizures by the government.[42] Where a search warrant is required to comply with the Fourth Amendment, the warrant "must be supported by an affidavit establishing probable cause."[43] "A warrant is supported by probable cause if, based on the totality of the circumstances, the application establishes 'a fair probability that contraband or evidence of a crime will be found in a particular place.'"[44] "Neither certainty nor a preponderance of the evidence is required."[45]

A court reviewing the validity of a search warrant must uphold the warrant "if the issuing judge had a substantial basis for concluding that probable cause existed based on the totality of the circumstances."[46] In conducting this review, "a court is limited to the

---

[39] Docket 123-3 at 1, 3.
[40] Docket 2.
[41] Docket 123; *see also* Docket 119; Docket 120; Docket 121; Docket 122; Docket 124.
[42] U.S. Const. amend. IV; *see also Heien v. North Carolina*, 574 U.S. 54, 60 (2014) ("[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'" (quoting *Riley v. California*, 573 U.S. 373, 381 (2014))).
[43] *Cameron v. Craig*, 713 F.3d 1012, 1018 (9th Cir. 2013) (internal quotation marks omitted).
[44] *United States v. Johnsen*, 176 F.4th 1208, 1215 (9th Cir. 2026) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).
[45] *United States v. Kelley*, 482 F.3d 1047, 1050 (9th Cir. 2007) (internal citations and quotations omitted).
[46] *United States v. Westfall*, 142 F.4th 1208, 1213 (9th Cir. 2025) (alteration omitted) (quoting *Ewing v. City of Stockton*, 588 F.3d 1218, 1223 (9th Cir. 2009)); *see also Massachusetts v. Upton*, 466 U.S. 727, 728 (1984) (per curiam) ("[T]he task of a reviewing court is not to conduct a de novo determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate[] [judge's] decision to issue the warrant."); *United States v. Gourde*, 440 F.3d 1065, 1069

information and circumstances contained within the four corners of the underlying affidavit."[47] A reviewing court "give[s] the magistrate judge's determination that probable cause exists 'great deference.'"[48]

Under *Franks v. Delaware*,[49] a defendant may attack the validity of a search warrant by challenging the veracity of statements made in support of the warrant application. In such cases, the defendant is entitled to an evidentiary hearing to investigate the affiant officer's veracity only if the defendant makes a "two-fold showing" of "intentional or reckless inclusion or omission, and materiality."[50] To satisfy this obligation, the defendant must make "a substantial preliminary showing" that: (1) the affiant intentionally or recklessly made false or misleading statements or omissions in support of the warrant; and (2) those false or misleading statements were "necessary to finding probable cause,"[51] such that the affidavit "purged of its falsities" would not have established probable cause for the search.[52] This preliminary showing cannot be "merely conclusory."[53]

## III. DISCUSSION

Defendant moves to suppress the evidence obtained from the execution of the search warrant for the SD card that V.C. gave to APD.[54] Defendant requests a *Franks* hearing on the ground that Detective Baker omitted information from her supporting affidavit that would have diminished V.C.'s reliability.[55] Defendant suggests that if this information had been

---

(9th Cir. 2006) (noting that reviewing courts "are not in a position to flyspeck the affidavit through de novo review" (quoting *Gates*, 462 U.S. at 236)).

[47] *United States v. Stanert*, 762 F.2d 775, 778 (9th Cir. 1985), *amended*, 769 F.2d 1410 (9th Cir. 1985).

[48] *United States v. Kleinman*, 880 F.3d 1020, 1036 (9th Cir. 2017) (quoting *Kelley*, 482 F.3d at 1050).

[49] 438 U.S. 154 (1978).

[50] *United States v. Bennett*, 219 F.3d 1117, 1124 (9th Cir. 2000).

[51] *United States v. Perkins*, 850 F.3d 1109, 1116 (9th Cir. 2017) (quoting *United States v. Martinez-Garcia*, 397 F.3d 1205, 1214–15 (9th Cir. 2005)).

[52] *Bennett*, 219 F.3d at 1124 (quoting *United States v. Meling*, 47 F.3d 1546, 1553 (9th Cir. 1995)); *see also Franks*, 438 U.S. at 155–56; *Perkins*, 850 F.3d at 1116.

[53] *United States v. Reeves*, 210 F.3d 1041, 1044 (9th Cir. 2000); *see also Franks*, 438 U.S. at 171 (requiring that preliminary showing include offer of proof).

[54] Although Defendant states that he challenges this search warrant "and any earlier warrant based on the same evolving provenance narrative," he has not clearly identified any other warrant whose validity he seeks to dispute. *See* Docket 138 at 15.

[55] Docket 123 at 5.

included in Detective Baker's affidavit, the issuing magistrate judge might have rejected the search warrant application for lack of probable cause.[56] In response, the government contends that Defendant is not entitled to a *Franks* hearing and that Detective Baker's supporting affidavit established probable cause.[57] The Court agrees with the government on both points.

First, Defendant has not made the substantial preliminary showing of a *Franks* violation necessary to justify a hearing. Defendant states that the purpose of a *Franks* hearing would be to determine "whether [Detective Baker] disclosed to the issuing judge that [V.C.'s] original account had been challenged, that officers doubted it, and that [V.C] had responded with another version of the story that she later admitted was also false."[58] But Detective Baker did just that in her affidavit. Specifically, Detective Baker recounted how: (1) V.C. told Detective Lee in her first interview that she had found the SD card on the sidewalk on 13th Avenue across the street from the supermarket and near an abandoned building, but said later in the interview that she had found the SD card in a parking lot at the corner of 13th Avenue and Fairbanks Street; (2) Detective Lee re-interviewed V.C. in order to ask her additional questions about how she had found the SD card; (3) Detective Lee told V.C. that she needed to be "completely honest with [APD] about where she had found the card"; and (4) V.C. initially repeated her story about finding the SD card on the ground, but ultimately admitted that she had stolen the card from the man whose voice could be heard in the videos.[59] Thus, contrary to Defendant's assertions, Detective Baker's description of the facts indicated that Detective Lee did not believe V.C.'s initial, inconsistent story about where she had found the SD card, and that this story had in fact been untruthful.

Moreover, Defendant offers no reason to believe that Detective Lee or Baker should have known that V.C.'s later, more plausible story about finding the SD card in Defendant's vehicle was also untruthful. The fact that V.C. testified at trial that she had actually taken Defendant's phone from his vehicle, not an SD card, does not provide a basis to challenge the

[56] Docket 123 at 5.
[57] Docket 131 at 14–17.
[58] Docket 123 at 5.
[59] Docket 139-1 at 6–7, ¶¶ 7–8.

veracity of the information in Detective Baker's affidavit.[60] Because there is no indication that Detective Baker intentionally or recklessly omitted information from her affidavit that would have been material to the issuing judge's probable cause determination, Defendant is not entitled to a *Franks* hearing.[61]

And second, Detective Baker's affidavit provided a substantial basis for concluding that there was probable cause to search the SD card for evidence of homicide. Defendant's theory to the contrary is based primarily on the notion that V.C. was not a credible source of information or that the information she provided was unreliable. But under the totality of the circumstances set forth in Detective Baker's affidavit, the issuing magistrate judge had sufficient reason to believe that the SD card contained the photos and videos that V.C. described.[62]

Probable cause in this case is not undermined by how V.C. acquired her information, either through theft of the SD card containing the photos and videos or theft of a phone containing those files. What is critical is that V.C. provided specific details of the disturbing content she had viewed, which "supported an inference as to the reliability of [her] information and [her] credibility."[63] There was no apparent reason to believe that V.C. might have lied about the serious crimes she had seen in the photos and videos, even if she was initially not

---

[60] *See United States v. Bishop*, 264 F.3d 919, 925 (9th Cir. 2001) (rejecting defendant's argument that informant's trial testimony contradicted statements informant had given to detective provided reason to question informant's veracity for purposes of *Franks* analysis, as "there was no reason at the time the warrant was issued for [the detective] to believe [the statements] were false and thus no reason to challenge the statements, either then or now").

[61] To the extent that Defendant insists a *Franks* hearing is warranted based on the allegedly suspect "provenance, possession, copying, and chain of custody" of the SD card, as well as law enforcement's later discovery of the SD card in Defendant's wallet, these arguments are meritless. *See* Docket 123 at 3, 20. The provenance and chain-of-custody issues discussed in the Motion may relate to the admissibility of the SD card's contents at trial, but they are not grounds to challenge the validity of the search warrant.

[62] *Cf. Bishop*, 264 F.3d at 924 ("When a search warrant is based solely on an informant's tip, the proper analysis is whether probable cause exists from the totality of the circumstances to determine a sufficient level of reliability and basis of knowledge for the tip." (citing *Gates*, 462 U.S. at 238)).

[63] *See United States v. Banks*, 539 F.2d 14, 17 (9th Cir. 1976) (citing *Spinelli v. United States*, 393 U.S. 410, 417 (1969)); *Ewing*, 588 F.3d at 1224 (first citing *Banks*, 539 F.2d at 17; then citing *United States v. Blount*, 123 F.3d 831, 835 (5th Cir. 1997); and then citing 2 Wayne R. LaFave, Search and Seizure § 3.4(a) (4th ed. 2004))).

honest about how she had obtained the SD card. V.C. first disclosed this information to her doctor, and she had no obvious ulterior motive to report it to APD. Moreover, V.C.'s eventual admission to taking the SD card from the man's car supported an inference as to why she might have been hesitant to truthfully report this aspect of the story at the outset, particularly given that she had previously been prosecuted for theft.[64] In sum, Detective Baker's affidavit established that V.C.'s information was supported by sufficient indicia of reliability to justify a search of the SD card for the photos and videos that V.C. reported were on the card. The Court therefore concludes that the search warrant for the SD card was valid.

## IV. CONCLUSION

For the foregoing reasons, the Court recommends that Defendant's Motion at Docket 123 be **DENIED**.

DATED this 21st day of September, 2026, at Anchorage, Alaska.

s/ Kyle F. Reardon
KYLE F. REARDON
United States Magistrate Judge
District of Alaska

## NOTICE OF RIGHT TO OBJECT

Under 28 U.S.C. § 636(b)(1), a district court may designate a magistrate judge to hear and determine matters pending before the Court. For dispositive matters, a magistrate judge reports findings of fact and provides recommendations to the presiding district court judge.[65] A district court judge may accept, reject, or modify, in whole or in part, the magistrate judge's findings and recommendations.[66]

A party may file written objections to the magistrate judge's findings and

[64] *See* Docket 139-1 at 7–8, ¶¶ 8–9.
[65] 28 U.S.C. § 636(b)(1)(B).
[66] *Id.* § 636(b)(1)(C).

recommendations within fourteen (14) days.[67] A response to the objections may be filed within seven (7) days after any objection is filed.[68] Objections and responses are limited to five (5) pages in length and should not merely reargue positions previously presented. Rather, objections and responses should specifically identify the findings or recommendations objected to, the basis of the objection, and any legal authority in support. Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the district court's judgment.[69]

---

[67] *Id.*; L.M.J.R. 7(a)(1).

[68] L.M.J.R. 7(a)(2).

[69] *See Hilliard v. Kincheloe*, 796 F.2d 308 (9th Cir. 1986).