**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

UNITED STATES OF AMERICA,

Plaintiff,

v.

BRIAN STEVEN SMITH,

Defendant.

Case No. 3:24-cr-00040-ACP-KFR

**REPORT AND RECOMMENDATION RE MOTION AT DOCKET 124**

Before the Court is a Motion to Stay Proceedings or in the Alternative to Dismiss Without Prejudice Pending Final Resolution of Defendant's State Court Appeal ("Motion") filed by self-represented Defendant Brian Steven Smith.[1] The government responded in opposition,[2] and Defendant replied.[3] For the reasons explained below, the Court recommends that Defendant's Motion be **DENIED**.

## I. BACKGROUND

In October 2019, the State of Alaska charged Defendant with multiple criminal offenses in connection with the deaths of two women.[4] On February 22, 2024, a jury found Defendant guilty of first-degree murder, second-degree murder, evidence tampering, and various sex crimes.[5] On July 12, 2024, the Alaska Superior Court sentenced Defendant to a term of

[1] Docket 124.
[2] Docket 131.
[3] Docket 138. The Court allowed Defendant to reply pursuant to Local Criminal Rule 47.1(d). Docket 135.
[4] The Court takes judicial notice of the docket records in Defendant's related state cases: *State of Alaska v. Smith*, Case No. 3AN-19-09901CR (criminal trial); *Smith v. State of Alaska*, Case No. A14512 (criminal appeal); and *In re Smith*, Case No. 3AN-24-09050CI (post-conviction relief proceedings). Judicial notice is the "court's acceptance, for purposes of convenience and without requiring a party's proof, of a well-known and indisputable fact; the court's power to accept such a fact." Black's Law Dictionary (12th ed. 2024); *see also* Fed. R. Evid. 201; *Headwaters Inc. v. U.S. Forest Service*, 399 F.3d 1047, 1051 n.3 (9th Cir. 2005) ("Materials from a proceeding in another tribunal are appropriate for judicial notice." (internal quotation marks and citation omitted)).
[5] *State of Alaska v. Smith*, Case No. 3AN-19-09901CR, Docket Event 02/22/2024.

imprisonment.[6] On October 7, 2024, Defendant appealed from the judgment of conviction to the Alaska Court of Appeals, where his case remains pending.[7] Defendant also filed a post-conviction relief application in the Alaska Superior Court, and that case likewise remains pending.[8]

On April 16, 2024—between Defendant's state conviction and sentencing—a federal grand jury returned an indictment charging Defendant with one count of Unlawful Procurement of Naturalization, in violation of 18 U.S.C. § 1425(a), and one count of Unlawful Procurement of Naturalization by an Ineligible Person, in violation of 18 U.S.C. § 1425(b).[9] A person violates § 1425(a) if they "knowingly procure or attempt to procure, contrary to law, the naturalization of any person . . . ." A person violates § 1425(b) if they knowingly "issue[], procure[], or obtain[] or appl[y] for" naturalization when they are "not entitled thereto[.]" To obtain naturalization, a person must meet several statutory requirements, including having been and continuing to be of "good moral character."[10] A person "who has given false testimony for the purpose of obtaining any [citizenship] benefits" cannot establish good moral character and is therefore ineligible for naturalization.[11]

According to the indictment, Defendant applied for and procured naturalization between June 7 and September 20, 2019.[12] In completing his naturalization application, the indictment alleges, Defendant knowingly provided false answers to several questions, including whether he had ever been involved in "[k]illing, or trying to kill, someone," "[b]adly hurting, or trying to hurt, a person on purpose," or "[f]orcing, or trying to force, someone to have any kind of sexual contact or relations."[13] The indictment further alleges that Defendant did not meet the requirements for naturalization because he was not a person of good moral character, as evidenced by Defendant having (1) committed "murder, sexual assault, tampering with

[6] *State of Alaska v. Smith*, Case No. 3AN-19-09901CR, Docket Entries 07/12/2024.
[7] *Smith v. State of Alaska*, Case No. A14512.
[8] *In re Smith*, Case No. 3AN-24-09050CI.
[9] Docket 2.
[10] 8 U.S.C. § 1427(a).
[11] 8 U.S.C. § 1101(f)(6).
[12] Docket 2 at 2.
[13] Docket 2 at 2–5.

physical evidence, and misconduct with a corpse through sexual penetration" before and during the period when he was pursuing his naturalization, and (2) given false testimony for the purpose of obtaining naturalization.[14] The indictment notified Defendant that, if convicted of either of the two counts with which he was charged, his naturalization would be revoked pursuant to 8 U.S.C. § 1451(e).[15]

On July 27, 2026, Defendant filed six substantive motions, including the instant Motion.[16]

## II. DISCUSSION

In his Motion, Defendant asks the Court to stay these proceedings or to dismiss them without prejudice pending the resolution of his related state cases.[17] Defendant maintains that his federal prosecution "depends largely upon the existence and legal effect of [his] February 22, 2024 Alaska conviction[s]," which he continues to challenge on appeal and in his state post-conviction proceeding.[18] Defendant further argues there is a chance of "inconsistent determinations concerning the same underlying events" if his federal prosecution proceeds now and his state convictions are later vacated.[19] In addition, Defendant submits that any collateral consequences of a conviction on either of his federal charges, such as loss of citizenship or removal, "could be difficult or impossible to fully unwind" if his state convictions are vacated.[20] Thus, Defendant maintains, litigation of his federal case is "premature" until his state convictions become final, and the Court should stay or dismiss the case pursuant to *Landis v. North American Co.*,[21] *Colorado River Water Conservation District v. United States*,[22] and *Younger v. Harris*.[23]

---

[14] Docket 2 at 6.
[15] Docket 2 at 7.
[16] Docket 119; Docket 120; Docket 124; *see also* Docket 121; Docket 122; Docket 123.
[17] Docket 124 at 1, 3–4.
[18] Docket 124 at 3–4.
[19] Docket 124 at 4.
[20] Docket 124 at 6–7.
[21] 299 U.S. 248 (1936).
[22] 424 U.S. 800 (1976).
[23] Docket 124 at 3–7; Docket 138 at 18–20; 401 U.S. 37 (1971).

The government counters that neither a stay nor dismissal of this case is appropriate because the mere fact of Defendant's state convictions is not necessary to meet its burden of proof on Defendant's federal charges.[24] The government disputes Defendant's assertion that its case relies on his state convictions, arguing that the elements of a conviction under 18 U.S.C. § 1425(a) and (b) are not the same as the elements of his state offenses.[25] The government contends that to prove that Defendant committed these federal offenses, it must demonstrate that (1) Defendant made false statements on his naturalization application when he denied having killed, badly hurt, or sexually assaulted anyone, and (2) those false statements were a reason to deny naturalization.[26]

The Court finds that none of the authorities Defendant identifies in his Motion support staying or dismissing this federal criminal proceeding pending the resolution of his state proceedings. Under *Landis*, "[a] district court has discretionary power to stay proceedings in its own court . . . ."[27] "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."[28] "A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case."[29] In exercising its discretion to stay its own proceeding, a district court must weigh competing interests, including

> the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.[30]

---

[24] Docket 131 at 17–19.
[25] Docket 131 at 17–18.
[26] Docket 131 at 18 (citing *Maslenjak v. United States*, 582 U.S. 335, 348–50 (2017)).
[27] *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) (citing *Landis*, 299 U.S. at 254).
[28] *Landis*, 299 U.S. at 254.
[29] *Lockyer*, 398 F.3d at 1111 (quoting *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979), *cert. denied*, 444 U.S. 827 (1979)).
[30] *Id.* at 1110 (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).

The longer the requested stay, the stronger the justification for the stay must be.[31]

Here, the *Landis* factors weigh against granting a stay.[32] First, the protracted stay that Defendant requests would harm the public's important interest in the prompt resolution of criminal cases.[33] This interest is reflected in the Speedy Trial Act, which recognizes that the right to a speedy trial belongs to both defendants and the public.[34]

Defendant's requested stay would also infringe on the federal government's authority to prosecute violations of federal criminal law. Under the dual sovereignty doctrine, "successive prosecutions based on the same conduct are permissible if brought by separate sovereigns."[35] The federal government and the State of Alaska are two such sovereigns; therefore, each is entitled to undertake its own prosecution of the laws it has jurisdiction to enforce.[36] An extended stay pending the outcome of Defendant's state proceedings would harm the federal government's strong interest in "decid[ing] that a state prosecution has not vindicated a violation of" its own laws.[37]

Second, and for similar reasons, the possibility that Defendant will be removed from

---

[31] *See Yong v. I.N.S.*, 208 F.3d 1116, 1119 (9th Cir. 2000); *see also Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059 (9th Cir. 2007) ("Generally, stays should not be indefinite in nature.").

[32] The Court assumes that *Landis* applies to Defendant's request to stay this federal criminal proceeding. Federal courts typically use the *Landis* framework to analyze whether it is appropriate to stay a federal civil case pending the resolution of judicial, administrative, or arbitral proceedings elsewhere. *See Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983) (quoting *Leyva*, 593 F.2d at 864). Defendant has not identified and the Court has not located case law involving a request for a federal district court to stay its own criminal proceeding based on an ongoing proceeding in another court. However, the Ninth Circuit has, in passing, at least contemplated the possibility of such a stay. *See United States v. Mussari*, 95 F.3d 787, 789 (9th Cir. 1996).

[33] *See Flanagan v. United States*, 465 U.S. 259, 265 (1984) ("[W]hen a crime is committed against a community, the community has a strong collective psychological and moral interest in swiftly bringing the person responsible to justice. . . . Crime inflicts a wound on the community, and that wound may not begin to heal until criminal proceedings have come to an end.").

[34] *See Zedner v. United States*, 547 U.S. 487, 500–01 (2006) ("[T]he [Speedy Trial] Act the Act was designed with the public interest firmly in mind. That public interest cannot be served, the Act recognizes, if defendants may opt out of the Act entirely." (citing 18 § 3161(h)(8)(A))).

[35] *United States v. Bernhardt*, 831 F.2d 181, 182 (9th Cir. 1987).

[36] *See Gamble v. United States*, 587 U.S. 678, 683–84, 689 (2019); *see also United States v. Yepez*, 704 F.3d 1087, 1091 (9th Cir. 2012) (en banc) ("In our American system of dual sovereignty, each sovereign—whether the Federal Government or a State—is responsible for the administration of its own criminal justice system." (quoting *Setser v. United States*, 566 U.S. 231, 241 (2012))).

[37] *Heath v. Alabama*, 474 U.S. 82, 93 (1985).

the United States upon a federal conviction does not justify a stay until his state proceedings conclude. The lawful consequences of a conviction of either of the federal charges Defendant faces are not grounds to delay his federal prosecution pending the resolution of his state criminal and post-conviction proceedings. This is particularly the case because, as explained below, the federal government intends to rely on evidence other than the fact of his state convictions in proving the elements of the charged federal offenses.

And third, Defendant is incorrect that his federal prosecution depends on the fact of his state convictions. The government represents that its "theory is that Defendant's lies [in] his naturalization application caused him to be awarded citizenship."[38] The government alleges that Defendant falsely answered "no" to questions whether he was ever involved in "[k]illing, or trying to kill, someone," "[b]adly hurting, or trying to hurt, a person on purpose," and "[f]orcing, or trying to force, someone to have any kind of sexual contact or relations."[39] Under the government's theory, to prove that Defendant violated § 1425(a), it must show that (1) Defendant knowingly made "a false statement . . . to government officials" in his application, and (2) the false statement "sufficiently altered the processes for investigating and adjudicating naturalization applications as to have influenced an award of citizenship."[40] Similarly, to prove that Defendant violated § 1425(b), the government must show that he gave false testimony for the purpose of procuring naturalization, making him unable to satisfy the good moral character requirement to obtain naturalization.[41]

Although the government might offer evidence of the fact of Defendant's state convictions as part of its case-in-chief, it has indicated that it does not intend to rely on that evidence alone to prove that Defendant made false statements in connection with his naturalization application. Rather, the government suggests that it intends to prove that Defendant made false statements with evidence of the "underlying conduct," that is,

---

[38] Docket 131 at 19.
[39] Docket 2 at 2–5.
[40] *United States v. Amintobia*, 57 F.4th 687, 697 (9th Cir. 2023) (internal quotation marks omitted) (quoting *Maslenjak*, 582 U.S. at 347).
[41] *See* 8 U.S.C. §§ 1101(f)(6), 1427(a); 18 U.S.C. § 1425(b).

Defendant's alleged commission of murder, sexual assault, and associated crimes.[42] The ultimate outcome of Defendant's state criminal proceedings is therefore not essential to the prosecution of this case. Even if Defendant's state convictions were vacated and he were acquitted after a retrial, that acquittal would not defeat his federal prosecution under § 1425.[43]

These considerations counsel against granting Defendant's requested stay under *Landis*. Moreover, Defendant's reliance on *Younger* and *Colorado River* is misplaced. In *Younger*, the U.S. Supreme Court held that federal courts "should abstain from staying or enjoining pending state criminal prosecutions absent extraordinary circumstances."[44] "*Younger* abstention is a jurisprudential doctrine rooted in overlapping principles of equity, comity, and federalism."[45] Meanwhile, *Colorado River* permits federal district courts in exceptional circumstances to "stay federal proceedings pending the resolution of concurrent state court proceedings involving the same matter."[46] For purposes of *Colorado River*, state and federal proceedings are substantially similar if they arise out the same alleged conduct and seek to vindicate the same rights.[47] Neither these doctrines nor their underlying rationale extend to federal criminal prosecutions, where the federal government has exercised its right as an independent sovereign to vindicate

---

[42] Docket 131 at 17–18.

[43] *See United States v. LaMere*, 951 F.2d 1106, 1107 (9th Cir. 1991) (holding that criminal defendant's acquittal in state court proceedings "did not bar his subsequent prosecution based on the same conduct" (citing *United States v. Figueroa-Soto*, 938 F.2d 1015, 1020 (9th Cir. 1991))); *see also United States v. Keane*, 522 F.2d 534, 554 n.38 (7th Cir. 1975) ("Since the crux of this case does not depend on the violation of specific Illinois statutes, we find no merit in defendant's contention that the court below should have abstained from trying this case, because of the complex state regulatory scheme involved or the pending state civil action against the defendant. . . . Even if the state court had determined that the statutes were inapplicable, although persuasive, we would not be bound by that decision inasmuch as conviction for mail fraud is not dependent upon a violation of state law.").

[44] *Bean v. Matteucci*, 986 F.3d 1128, 1133 (9th Cir. 2021) (citing *Younger*, 401 U.S. at 45).

[45] *Arevalo v. Hennessy*, 882 F.3d 763, 765 (9th Cir. 2018) (internal quotation marks omitted) (quoting *San Jose Silicon Valley Chamber of Commerce Pol. Action Comm. v. City of San Jose*, 546 F.3d 1087, 1091–92 (9th Cir. 2008), *abrogated on other grounds by Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013)); *see also Juidice v. Vail*, 430 U.S. 327, 334 (1977) (explaining that *Younger* doctrine is motivated by "the notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways" (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 601 (1975))).

[46] *Holder v. Holder*, 305 F.3d 854, 867 (9th Cir. 2002) (internal quotation marks and citations omitted); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983).

[47] *See Montanore Minerals Corp. v. Bakie*, 867 F.3d 1160, 1170 (9th Cir. 2017).

violations of its own laws.[48] "[I]t is not this Court's province to override the executive branch's decisions about when it is advisable to prosecute an individual for a violation of federal law."[49]

Accordingly, Defendant's request for a stay should be denied. Defendant's alternative request for dismissal without prejudice is similarly without merit and should therefore be denied as well.[50]

## III. CONCLUSION

For the foregoing reasons, the Court recommends that Defendant's Motion to Stay Proceedings or in the Alternative to Dismiss Without Prejudice Pending Final Resolution of Defendant's State Court Appeal at Docket 124 be **DENIED**.

DATED this 21st day of September, 2026, at Anchorage, Alaska.

/s/ Kyle F. Reardon
KYLE F. REARDON
United States Magistrate Judge
District of Alaska

## NOTICE OF RIGHT TO OBJECT

Under 28 U.S.C. § 636(b)(1), a district court may designate a magistrate judge to hear and determine matters pending before the Court. For dispositive matters, a magistrate judge

---

[48] *See United States v. Geiger*, 263 F.3d 1034, 1040 (9th Cir. 2001) ("*Younger* abstention does not apply to federal criminal prosecutions; a federal prosecutor can indict a state criminal defendant even while state proceedings are ongoing."); *United States v. Long*, 324 F.3d 475, 477 (7th Cir. 2003) ("[A] federal court generally may not choose to 'abstain' from exercising its jurisdiction in a criminal prosecution."); *United States v. Pirtle*, No. 02-1891, 2003 WL 27385324, at *2 (D.N.M. May 19, 2003) ("The *Younger* and *Colorado River* abstention doctrines do not apply to federal prosecutions." (citations omitted)).

[49] *Pirtle*, 2003 WL 27385324, at *2.

[50] *Cf. Sprint Commc'ns*, 571 U.S. at 72 ("In the main, federal courts are obliged to decide cases within the scope of federal jurisdiction. . . . Federal courts . . . have 'no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.' Jurisdiction existing . . . a federal court's 'obligation' to hear and decide a case is 'virtually unflagging.'" (first quoting *Cohens v. Virginia*, 6 Wheat. 264, 404 (1821); and then quoting *Colorado River*, 424 U.S. at 817)).

reports findings of fact and provides recommendations to the presiding district court judge.[51] A district court judge may accept, reject, or modify, in whole or in part, the magistrate judge's findings and recommendations.[52]

A party may file written objections to the magistrate judge's findings and recommendations within fourteen (14) days.[53] A response to the objections may be filed within seven (7) days after any objection is filed.[54] Objections and responses are limited to five (5) pages in length and should not merely reargue positions previously presented. Rather, objections and responses should specifically identify the findings or recommendations objected to, the basis of the objection, and any legal authority in support. Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the district court's judgment.[55]

---

[51] 28 U.S.C. § 636(b)(1)(B).
[52] *Id.* § 636(b)(1)(C).
[53] *Id.*; L.M.J.R. 7(a)(1).
[54] L.M.J.R. 7(a)(2).
[55] *See Hilliard v. Kincheloe*, 796 F.2d 308 (9th Cir. 1986).